## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **EDWIN WALKER,** | : | **Civil No. 3:11-CV-1750** |
| | : | |
| **Plaintiff** | : | |
| | : | **(Judge Nealon)** |
| **v.** | : | |
| | : | **(Magistrate Judge Carlson)** |
| | : | |
| **JEROME WALSH, et al.,** | : | |
| | : | |
| **Defendants.** | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

The plaintiff, a prisoner housed in the State Correctional Institution (SCI) Dallas, who is proceeding *pro se*, first commenced this action by filing a complaint on September 20, 2011. (Doc. 1.) Walker's initial complaint named four defendants: Jerome Walsh, the Superintendent at SCI Dallas, Gary Gordon, a supervisory major at the institution; Michael Goyne, who was alleged to have been Walker's unit manager at the time of the events set forth in the complaint; and Dorina Varner (who is referred to as "Dorian Verner" in the complaint), the chief grievance officer for the Pennsylvania Department of Corrections.

Having named these four defendants, Walker's complaint recited that the plaintiff is a 68 year-old inmate who had been incarcerated for the past fifteen years.

1

(Id.) According to Walker's complaint, in May of 2011, he was assigned to a housing unit overseen by defendant Goyne, and was inappropriately assigned to an upper bunk in that housing unit, a sleeping arrangement that Walker avers is not permitted for elderly inmates like himself. (Id.) Walker further asserted that on May 17, 2011, he fell from this bunk suffering broken ribs and other injures. (Id.) According to Walker the defendants displayed deliberate indifference to his safety by placing him in this dangerous situation for an elderly inmate, and in failing to promptly obtain medical treatment for him following this fall. (Id.) Walker's complaint went on to allege that the defendants then conspired to provide him with unsatisfactory answers to his various grievances about this incident. (Id.)

On the basis of these averments Walker sought declaratory relief and both compensatory and punitive damages from the defendants. (Id.) While Walker's complaint, liberally construed, alleged direct involvement by defendant Goyne in the events leading up to his injury, as to defendants Walsh and Gordon, the Superintendent and supervisory major, the complaint seemed to hold these officials liable simply because they served as institutional supervisors at the time of these events. (Id.) Furthermore, defendant Varner is named in this complaint solely because Walker was dissatisfied with her response to his grievances.(Id.)

Along with his complaint, Walker filed a motion for leave to proceed *in forma pauperis*.(Doc. 3.) Because these allegations against defendant Goyne state colorable claims, we granted Walker's motion to proceed *in forma pauperis*, as to this defendant, provided Walker completed the prisoner authorization process required by law. However, because we found that Walker's allegations with respect to defendants Walsh, Gordon and Varner failed to state a claim upon which relief can be granted it was recommended that these defendants be dismissed from this lawsuit, without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acted within 20 days of any dismissal order.(Doc. 6.)

On February 1, 2012 the district court adopted this report and recommendation, and dismissed Walker's complaint as to defendants Varner, Walsh, and Gordon, without prejudice to the plaintiff endeavoring to correct the defects cited in this report, provided that the plaintiff acts within 20 days of any dismissal order. (Doc. 15.) Walker then filed an amended complaint on February 22, 2012. (Doc. 16.) This amended complaint advanced a new legal claim and asserted that Walker had a constitutionally protected liberty interest in a specific housing assignment at the prison. (Id.) The amended complaint then went on to recite that defendant Walsh, the prison superintendent, was liable to Walker for violating this liberty interest because Walsh had denied Walker's grievance of the decision to change his housing

designation. (Id.) The amended complaint contained no factual recitals whatsoever as to defendants Gordon and Varner. (Id.)

Having conducted a second screening review of this amended complaint, for the reasons set forth below it is submitted that the complaint should be dismissed with prejudice as to defendants Walsh, Varner and Gordon.

II.    **Discussion**

A.    **Screening of *Pro Se* Prisoner Complaints–Standard of Review**

This Court has a continuing statutory obligation to conduct a preliminary review of *pro se* complaints which seek redress against government officials. Specifically, we are obliged to review the complaint pursuant to 28 U.S.C. § 1915A which provides, in pertinent part:

> **(a) Screening**. - The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.

> **(b) Grounds for dismissal**. - On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint-

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

> (2) seeks monetary relief from a defendant who is immune from such relief.

Under Section 1915A, the Court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in <u>Bell Atlantic Corp. v. Twombly,</u> 550 U.S. 544 (12007) continuing with our opinion in <u>Phillips</u> [<u>v. County of Allegheny</u>, 515 F.3d 224, 230 (3d Cir. 2008)]and culminating recently with the Supreme Court's decision in <u>Ashcroft v. Iqbal</u> –U.S.–, 129 S.Ct. 1937 (2009) pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

<u>Fowler v. UPMC Shadyside</u>, 578 F.3d 203, 209-10 (3d Cir. 2009).

In considering whether a complaint fails to state a claim upon which relief may be granted, the Court must accept as true all allegations in the complaint and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff. <u>Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.,</u> 20 F.3d 1250, 1261 (3d Cir. 1994). However, a court "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."

Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Additionally a court need not "assume that a ... plaintiff can prove facts that the ... plaintiff has not alleged."   Associated Gen. Contractors of Cal. v. California State Council of Carpenters, 459 U.S. 519, 526 (1983). As the Supreme Court held in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), in order to state a valid cause of action a plaintiff must provide some factual grounds for relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555.  "Factual allegations must be enough to raise a right to relief above the speculative level."  Id. In keeping with the principles of Twombly, the Supreme Court has underscored that a trial court must assess whether a complaint states facts upon which relief can be granted when ruling on a motion to dismiss.  In Ashcroft v. Iqbal, __U.S. __, 129 S.Ct. 1937 (2009), the Supreme Court held that, when considering a motion to dismiss, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."  Id. at 1950. According to the Supreme Court, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 1949.  Rather, in conducting a review of the adequacy of complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual

allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

Id. at 1950.

Thus, following Twombly and Iqbal a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a complaint must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. As the United States Court of Appeals for the Third Circuit has stated:

> [A]fter Iqbal, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts.

Fowler, 578 F.3d at 210-11.

In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis: "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Iqbal, 129 S.Ct. at 1947. Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Id. at 1950. Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they

plausibly give rise to an entitlement for relief.' Id." Santiago v. Warminster Tp., 629 F.3d 121, 130 (3d Cir. 2010).

In addition to these pleading rules, a civil complaint must comply with the requirements of Rule 8(a) of the Federal Rule of Civil Procedure which defines what a complaint should say and provides that:

> (a) A pleading that states a claim for relief must contain (1) a short and plain statement of the grounds for the court's jurisdiction, unless the court already has jurisdiction and the claim needs no new jurisdictional support; (2) a short and plain statement of the claim showing that the pleader is entitled to relief; and (3) a demand for the relief sought, which may include relief in the alternative or different types of relief.

Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se* plaintiff's complaint must recite factual allegations which are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

### B.    In Its Current Form, Walker's Amended Complaint Still Fails to State a Claim Against The Supervisory Defendants

Judged against these legal benchmarks, Walker's amended complaint against the prison supervisory defendants, defendants Walsh, Gordon and Varner still fails to state a claim upon which relief can be granted. Walker's amended complaint names these supervisory prisons officials as defendants, but remains largely bereft of any factual allegations regarding direct misconduct any of by these individual defendants. This is a fatal flaw in this pleading since it is clear that a claim of a constitutional

deprivation cannot be premised merely on the fact that the named defendant was government supervisory official, when the incidents set forth in the complaint occurred. Quite the contrary, to state a constitutional tort claim the plaintiff must show that the supervisory defendants actively deprived him of a right secured by the Constitution. Morse v. Lower Merion School Dist., 132 F.3d 902 (3d Cir. 1997); see also Maine v.Thiboutot, 448 U.S. 1 (1980). Constitutional tort liability is personal in nature and can only follow personal involvement in the alleged wrongful conduct shown through specific allegations of personal direction or of actual knowledge and acquiescence in the challenged practice. Robinson v. City of Pittsburgh, 120 F.3d 1286 (3d Cir. 1997).

In particular, with respect to government supervisory officials it is well-established that:

> "A[n individual government] defendant in a civil rights action must have personal involvement in the alleged wrongdoing; liability cannot be predicated solely on the operation of *respondeat superior*. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988).

Evancho v. Fisher, 423 F.3d 347, 353 (3d Cir. 2005).

As the Supreme Court has observed:

> Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. . . . See Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978) (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); see also Dunlop v.

> Munroe, 7 Cranch 242, 269, 3 L.Ed. 329 (1812) (a federal official's liability "will only result from his own neglect in not properly superintending the discharge" of his subordinates' duties); Robertson v. Sichel, 127 U.S. 507, 515-516, 8 S.Ct. 1286, 3 L.Ed. 203 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of the subagents or servants or other persons properly employed by or under him, in the discharge of his official duties"). Because vicarious liability is inapplicable to Bivens and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.

Ashcroft v. Iqbal,  129 S.Ct. 1937, 1948 (2009).

Applying these benchmarks, courts have frequently held that, in the absence of direct evidence of supervisory knowledge and approval of subordinates' actions, a plaintiff may not maintain an action against supervisors based upon the misdeeds of their subordinates. O'Connell v. Sobina, No. 06-238, 2008 WL 144199, * 21 (W.D. Pa. Jan. 11, 2008); Neuburger v. Thompson, 305 F. Supp. 2d 521, 535 (W.D. Pa. 2004). Rather, "[p]ersonal involvement must be alleged and is only present where the supervisor directed the actions of supervisees or actually knew of the actions and acquiesced in them. See Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)." Jetter v. Beard, 183 F. App'x 178, 181 (3d Cir. 2006).

Here, Walker simply does not adequately allege that any of the named individual defendants directed the acts set forth in the complaint, or had knowledge of that conduct and acquiesced in it. In fact, with respect to defendants Gordon and Varner Walker merely listed these individuals in the caption of the amended

complaint, without setting forth any basis for a claim against them in the body of this pleading, a style of pleading which is plainly inadequate to state a claim against a prison supervisor and compels dismissal of these defendants. Hudson v. City of McKeesport, 241 F. App'x 519 (3d Cir. 2007)(affirming dismissal of defendant who was only named in caption of case.) Therefore, these individual defendants should be dismissed from this case.

In addition, the gravamen of Walker's allegations against these prison officials continues to be his dissatisfaction with the responses he received from the supervisory defendants in response to the various grievances which he lodged. This claim, which lies at the heart of this complaint against these correctional officials, fails for several reasons. First, it is clear that inmates cannot sustain constitutional claims against prison officials based solely upon assertions that those officials failed to adequately investigate their past grievances. Inmates do not have a constitutional right to a prison grievance system. See Jones v. North Carolina Prisoners' Union, 433 U.S. 119, 137-38 (1977); Speight v. Sims, No. 08-2038, 283 F. App'x 880, 2008 WL 2600723 at *1 (3d Cir. June 30, 2008) (citing Massey v. Helman, 259 F.3d 641, 647 (7th Cir. 2001) ("[T]he existence of a prison grievance procedure confers no liberty interest on a prisoner."). Consequently, dissatisfaction with response to an inmate's grievances does not support a constitutional claim. See also Alexander v. Gennarini, 144 F. App'x 924 (3d Cir. 2005) (involvement in post-incident grievance process not

a basis for § 1983 liability); <u>Pryor-El v. Kelly</u>, 892 F. Supp. 261, 275 (D. D.C. 1995) (because prison grievance procedure does not confer any substantive constitutional rights upon prison inmates, the prison officials' failure to comply with grievance procedure is not actionable). <u>See also</u> <u>Cole v. Sobina</u>, No. 04-99J, 2007 WL 4460617, at *5 (W.D. Pa. Dec. 19, 2007) ("[M]ere concurrence in a prison administrative appeal process does not implicate a constitutional concern."). As the United States Court of Appeals for the Third Circuit recently observed when disposing of a similar claim by another inmate:

> Several named defendants, such as the Secretaries of the Department of Corrections or Superintendents, were named only for their supervisory roles in the prison system. The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them. <u>See Rode v. Dellarciprete</u>, 845 F.2d 1195, 1207 (3d Cir.1988) (defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior* ); <u>see also Antonelli v. Sheahan</u>, 81 F.3d 1422, 1430 (7th Cir.1996) (state's inmate grievance procedures do not give rise to a liberty interest protected by the Due Process Clause)

<u>Pressley v. Beard</u>, 266 F.App'x 216, 218 (3d Cir. 2008).

In sum, it is clearly established that inmates have no constitutional right to a grievance procedure in prison. <u>See, e.g.</u>, <u>Rivera v. Dep't of Corrections</u>, 3466 F.App'x 749 (3d Cir. 2009); <u>Smith v. Lycoming County</u>, 335 F.App'x 147 (3d Cir. 2009); <u>Bartelli v. Galabanski</u>, 225 F.App'x 194 (3d Cir. 2007). Therefore, the existence of a grievance procedure does not confer any substantive constitutional rights on inmates

like Walker, <u>Bartelli v. Jones</u>, 231 F.App'x 129 (3d Cir. 2007), and Walker's otherwise unadorned complaints about the handling of these grievances fail as a matter of law.

Finally, Walker's claims against these prison supervisors based upon his transfer from one housing unit to another run afoul of a settled legal tenet. Walker cannot premise a claim against these prison supervisors solely upon the decision to transfer this inmate to from one housing unit to another. Indeed, contrary to Walker's assertions, it is well established that the United States Constitution does not confer any right upon an inmate to any particular custody or security classification. <u>Moody v. Daggett</u>, 429 U.S. 78, 88 (1976); <u>Montanye v. Haymes</u>, 427 U.S. 236, 242 (1976). Thus, inmates do not have a liberty interest in retaining or receiving any particular security or custody status "[a]s long as the [challenged] conditions or degree of confinement is within the sentence imposed ... and is not otherwise violative of the Constitution." <u>Id.</u> Similarly, it has long been recognized that prison transfer decisions, standing alone, do not constitute cruel and unusual punishment in violation of the Eighth Amendment to the Constitution. <u>See, e.g.</u>, <u>Hassain v. Johnson</u>, 790 F.2d 1420 (9th Cir. 1986); <u>Serrano v. Torres</u>, 764 F.2d 47 (1st Cir. 1985). Therefore, even inmate transfers to facilities far from their homes do not rise to the level of cruel and unusual punishment. <u>See, e.g., Gov't of Virgin Island v. Gereau</u>, 592 F.2d 192 (3d Cir. 1979)(transfer from Virgin Islands to mainland); <u>Rodriguez-Sandoval v. United</u>

States, 409 F.2d 529 (1st Cir. 1969)(transfer from Puerto Rico to Atlanta). In sum, well-settled law establishes that prisoners have no inherent constitutional right to placement in any particular prison, to any  security classification, or to any particular housing assignment. See Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Meachum v. Fano, 427 U.S. 215 225 (1976); Montanye, 427 U.S. at 242; Bulger v. U.S. Bureau of Prisons, 65 F.3d 48 (5thCir. 1995); Marchesani v. McCune, 531 F.2d 459 (10th Cir.), cert.denied, 429 U.S. 846 (1976). Simply put, as a legal matter Walker has no constitutional right to choose his prison housing unit, and may not base a constitutional claim against corrections officials simply upon their selection of his place of confinement.

Having conducted this screening analysis and determined that Walker's amended complaint is still wanting as to the three supervisory defendants named in this pleading, we recognize that in civil rights cases *pro se* plaintiffs often should be afforded an opportunity to amend a complaint before the complaint is dismissed in its entirety, See Fletcher-Hardee Corp. v. Pote  Concrete Contractors, 482 F.3d 247, 253 (3d Cir. 2007), unless granting further leave to amend would be futile or result in undue delay. Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). With respect to the supervisory defendants named in this amended complaint, in this case the Court has previously provided the plaintiff with an opportunity to amend these pleadings, but to no avail. The current amended complaint still fails to state a viable civil rights cause

of action against these defendants, and actually repeats assertions that were previously found to be legally insufficient.  Since the plaintiff has been afforded an opportunity to correct the deficiencies identified in his prior complaint with respect to these defendants, has failed to state a viable civil rights cause of action, and the factual and legal grounds proffered in support of the second amended complaint make it clear that he has no right to relief, granting further leave to amend would be futile or result in undue delay.  Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  Therefore it is recommended that the amended complaint be dismissed as to defendants Walsh, Gordon and Varner without further leave to amend.

### III.   Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the Plaintiff's amended complaint should be dismissed with prejudice as to defendants Walsh, Gordon and Varner, but the original complaint should be served as to the non-supervisory defendant named in that complaint, defendant Goyne.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo

determination of those portions of the report or specified  proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 6th day of March, 2012.


*S/Martin C.  Carlson*
Martin C. Carlson
United States Magistrate Judge